IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GRAHAM CONSTRUCTION, INC., AND ARCH INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>MARKEL AMERICAN INSURANCE, Co.,<br><br>Defendant. | 8: 15CV276<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 22) filed by Plaintiffs Graham Construction, Inc. ("Graham") and Arch Insurance Co. ("Arch") (collectively "Plaintiffs") and the Motion for Summary Judgment (Filing No. 26) (collectively "Motions") filed by Defendant Markel American Insurance Co. ("Markel"). For the reasons discussed below, Plaintiffs' Motion will be denied, Markel's Motion will be granted, and this case will be dismissed with prejudice.

## BACKGROUND

The following facts are those stated in the parties' briefs, supported by pinpoint citations to evidence in the record, and admitted or not properly resisted by the opposing party as required by NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

On or about June 20, 2007, Graham Contracting, Inc. ("Graham Contracting") and Wal-Mart Stores, Inc. ("Wal-Mart") entered into a contract ("Wal-Mart Contract") for

---

[1] *See* NECivR 56.1(b)(1) (effective December 1, 2015):
The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

The parties filed competing motions for summary judgment and substantially complied with NECivR 56.1(b) with respect to the presentation of their facts and evidence.

the construction of a Wal-Mart Supercenter in Omaha, Nebraska ("Wal-Mart Project"), for which Graham Contracting would be the general contractor. (Filing No. 25-7 at ECF 5.) On or about September 24, 2007, Graham Contracting assigned the Wal-Mart Contract and all related subcontracts to Graham (the "Assignment"). (Filing No. 27 ¶ 12; 25-6 at ECF 2.)

On or about January 18, 2008, Graham Contracting and D & BR Building Systems, Inc. ("D & BR") entered into a subcontract ("Subcontract") for the purpose of providing certain steelwork for the Wal-Mart Project. (Filing No. 23 ¶ 3.) The Subcontract was assigned to Graham pursuant to the terms of the Assignment. (*Id.* ¶ 4.) At all relevant times, Graham was insured by Arch, and D & BR was insured by Markel. (Filing No. 23 ¶¶ 1–2.)

> § 18 of the Subcontract stated:
>
> [D & BR] will obtain and keep in force during the term of this contract public liability and property damage insurance with coverage equal to, or greater than, the minimum specified in the Main Contract and Contractor requirements. [D & BR] shall furnish to [Graham] evidence of this insurance as in the same form as described in Paragraph 17 above and naming [Graham], [Wal-Mart] and those identified in the Main Contract as additional insureds for ongoing and completed operations with respect to work performed by or on the behalf of [D & BR]. In addition, a waiver of subrogation shall be provided on behalf of the additional insureds. Such insurance shall be primary and non-contributory to that of the additional insureds. The insurance shall include: contractual liability coverage applicable to the indemnity provisions of this subcontract, defense costs outside of policy limits, and coverage for punitive damage . . . . Evidence of this insurance shall also be accompanied by a completed and signed "Insurance Coverage Checklist and Certification" . . . and the following policy endorsements: additional insured, primary and non-contributory, waiver of subrogation and per project aggregate . . . .

(Filing No. 25-4 at ECF 10 § 18.) § 29 of the Subcontract stated:

> <u>INDEMNIFICATION</u>. [D & BR] agrees to defend, indemnify and hold [Graham] harmless from any and all claims, demands, losses

2

and liabilities to or by third parties arising from, resulting from, or connected with services performed or to be performed under this Subcontract by [D & BR] or [D & BR's] agents or employees to the fullest extent permitted by law and subject to the limitations provided below.

[D & BR's] duty to indemnify [Graham] shall not apply to liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of [Graham] or [Graham]'s agent or employees.

[D & BR's] duty to indemnify [Graham] for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of (a) [Graham] or [Graham]'s agents or employees, and (b) [D & BR] or [D & BR's] agents or employees, shall apply only to the extent of negligence of [D & BR] or [D & BR's] agents or employees.

[D & BR] specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on the amount of type of damage, compensation or benefits payable to or for any third party under workers' compensation acts, disability benefits acts, or other employee benefits acts; provided [D & BR's] waiver of immunity by the provisions of this paragraph extends only to claims against [D & BR] by [Graham], and does not include, or extend to, any claims by [D & BR's] employees directly against [D & BR].

[D & BR's] duty to defend, indemnify and hold [Graham] harmless shall include, as to all claims, demand, losses and liability to which it applies, [Graham's] personnel-related costs, reasonable attorneys' fees, court costs and all other claim-related expenses.

(*Id.* at ECF 12 § 29.)

Markel issued an insurance policy to D & BR for the period of August 27, 2007, to August 27, 2008 ("Markel Policy"). (Filing No. 27 ¶ 29.) The Markel Policy provided coverage for bodily injury subject to a $1,000,000 each-occurrence limit. The Markel Policy's Bodily Injury and Property Damage Liability Coverage Insuring Agreement stated in part that:

> [Markel] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Markel] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Markel] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(Filing Nos. 27 ¶ 31; 25-1 at ECF 68.)

The Markel Policy contained a Products-Completed Operations Endorsement ("Completed Operations Endorsement"), which stated that the policy included Graham "as an additional insured . . . but only with respect to liability for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work'[2] . . . performed for that additional insured and included in the 'products completed operations hazard'."[3] (Filing No. 25-1 at ECF 183.) The Markel Policy also contained a Commercial General Liability Plus Extension Endorsement ("Additional Insured Endorsement") which stated in part:

> "Any person or organization for whom [D & BR] [is] required by written contract . . . to provide insurance is an Insured subject to the following additional provisions: . . . [t]he . . . organization is an Insured only to the extent [D & BR] [is] held liable due to . . . [D & BR's] ongoing operations for the insured, whether the work is performed [by or for D & BR].
>
> . . . .

---

[2] The Markel Policy defined "your work" as including "[w]ork or operations performed by [D & BR] or on [D & BR's] behalf . . . ." (Filing No. 25-1 at ECF 81 § 22.)

[3] The Products-Completed Operations Hazard stated that the hazard:
a. Includes all "bodily injury" and "property damage" occurring away from the premises [D & BR] own[s] or rent[s] and arising out of "your product" or "your work" except:
    (1) Products that are still in [D & BR's] physical possession; or
    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
        (a) When all of the work called for in your contract has been completed,
        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor work on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.
(Filing No. 25-1 at ECF 80 § 16.)

> No coverage will be provided if, in the absence of this endorsement, no liability will be imposed by law on [D & BR]. Coverage will be limited to the extent of [D & BR's] negligence or fault according to the applicable principles of comparative fault.

(Filing Nos. 23 ¶ 9; 25-1 at ECF 119 § XIII.)

On or about January 9, 2008, D & BR provided Graham with a Certificate of Liability Insurance ("Certificate"). (Filing Nos. 23 ¶ 7; 27 ¶ 33.) The Certificate stated that "[Graham] and others required by contract are included as additional insured on general liability (coverage is primary and non-contributory and includes completed operations)." (Filing No. 25-5 at ECF 2.) The Certificate also stated it was "issued as a matter of information only and confer[red] no rights upon the certificate holder." (*Id.*)

On January 27, 2008, Jose Sanchez Dominguez ("Sanchez") was working on the Wal-Mart Project for D & BR when he fell off the roof of the structure and suffered fatal injuries. (Filing No. 23 ¶ 10.) On or about December 8, 2008, Guadalupe Gaytan ("Gaytan"), as Special Administrator of the estate of Sanchez, filed a lawsuit against Graham and D & BR in the District Court of Douglas County, Nebraska ("First Gaytan Action"). (*Id.*) Gaytan named D & BR for subrogation purposes of Nebraska Workers' Compensation Act.[4] (*Id.*) On June 9, 2009, Graham filed an amended answer and cross-claim against D & BR pursuant to the indemnity provisions in the Subcontract. (*Id.* ¶ 11.) On January 19, 2010, Gaytan voluntarily dismissed the First Gaytan Action. (*Id.* ¶ 12.)

On or about January 26, 2010, Gaytan filed a second action, which is currently pending in the District Court of Douglas County, Nebraska, against Wal-Mart, Graham,

---

[4] Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Cum. Supp. 2014).

5

and D & BR ("Second Gaytan Action").[5] (*Id.* ¶ 13.) D & BR was named for subrogation purposes of Nebraska's workers' compensation statutes. (*Id.*) In the action, Gaytan alleged that Graham was in overall control of the Wal-Mart Project, that Graham "failed to exercise reasonable care in the exercise of the control placed [sic] which it had in its contract with Wal-Mart," that Graham "violated duties owed to [Sanchez] and all workers on the premises" and that Graham, "[i]n addition to it's [sic] direct negligence, . . . had a nondelegable duty to protect [Sanchez] from harm." (Filing No. 25-9 at ECF 5 ¶¶ 14–16.) Gaytan alleged that "[a]s a direct and a proximate result of the negligence of Graham, whether direct of imputed, [Sanchez] sustained blunt trauma to his head and chest. These injuries caused his death." (*Id.* at ECF 5 ¶ 17.)

As to D & BR, Gaytan alleged that at the time of the accident, "[Sanchez] was an employee of Stellar Staffing who contracted with [D & BR] to provide laborers . . . . [D & BR] was a sub-contractor for [Graham] . . . . [D & BR] is named as a Defendant because it, or its insurance carrier, may have a subrogation claim for workers compensation benefits." (*Id.* at ECF 4 ¶ 7.) On May 19, 2010, Graham filed an answer and cross-claim for indemnity against D & BR, pursuant to the Subcontract, alleging that Sanchez's death was proximately caused by the negligence of D & BR. (Filing No. 23 ¶ 17.)

On July 18, 2011, the District Court of Douglas County entered an order sustaining Wal-Mart's and Graham's motions for summary judgment on all of Gaytan's claims. (*Id.* ¶ 18.) The court held that Wal-Mart did not owe Sanchez any duty based on the control-over-the-work exception to the rule of a general contractor's non-liability

---

[5] *Guadalupe Gaytan, Special Administrator of the Estate of Jose Sanchez-Dominguez v. Wal-Mart, et al.*, District Court of Douglas County, Nebraska, No. CI 10-9387269.

6

for its subcontractor's negligence; that Graham did not exercise sufficient control over D & BR's work to give rise to a duty to protect Sanchez; and that neither Wal-Mart nor Graham breached any of the nondelegable duties recognized under Nebraska law. (*Id.*) On July 10, 2012, the court dismissed Graham's cross-claim. (*Id.* ¶ 19.)

Gaytan appealed, and the Nebraska Supreme Court reversed the District Court of Douglas County's order and remanded for further proceedings with respect to Gaytan's claim that Graham retained sufficient control over D & BR's use of safety equipment on the Wal-Mart Project.[6] (*Id.* ¶ 22.) The Nebraska Supreme Court affirmed the court's order in all other respects. (*Id.*) On December 11, 2015, Graham filed an amended third-party complaint in the Second Gaytan Action for indemnification against D & BR, which D & BR answered on January 11, 2016. (*Id.* ¶ 26.) On several occasions, Graham tendered its defense in the Second Gaytan Action to Markel. (*Id.* ¶ 27.)

On May 20, 2015, Plaintiffs filed this action in the District Court of Douglas County, Nebraska. (*See* Filing No. 1.) On July 23, 2015, Markel removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and 1446, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). (*Id.* at ECF 2 ¶¶ 9–12.) On November 3, 2015, Graham filed an amended complaint with this Court seeking a declaratory judgment that (i) Graham is an additional insured under the Markel Policy; (ii) Markel is obligated to provide a defense to Graham in the Second Gaytan Action by retaining counsel and paying all costs and expenses associated with such defense; (iii) Markel is obligated to reimburse Arch all sums Arch expended to date in defense of Graham with respect to

---

[6] *See Gaytan v. Wal-Mart*, 853 N.W.2d 181 (Neb. 2014).

7

the Second Gaytan Action; (iv) Markel is obligated to indemnify Graham in the event any judgment may be entered in favor of Gaytan; (v) Markel is required to pay the attorneys' fees of Arch and Graham for bringing this action pursuant to Neb. Rev. Stat. § 44-359; and (vi) Markel is required to pay Plaintiffs' costs in this action. (Filing No. 17.) The parties filed cross-motions for summary judgment on January 29, 2016. (Filing Nos. 22 & 26.)

**STANDARD**

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S. Ct. 513 (2011)). In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there

8

is an absence of evidence to support the nonmoving party's case." *Id.* (quoting Fed. R. Civ. P. 56(c)).

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (internal quotation marks omitted) (quoting *Torgerson*, 643 F.3d at 1042). "[T]he mere existence of some alleged factual dispute between the parties" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

**DISCUSSION**

A review of the record reveals that there are no disputes of material fact and disposition by summary judgment is appropriate. *See Moller v. State Farm Mut. Auto. Ins. Co.*, 566 N.W.2d 382, 385 (Neb. 1997) ("[When] there are no material issues of fact in dispute, [a court's] interpretation of the terms and conditions of [an] insurance policy is a question of law.").[7]

In determining whether Markel is obligated to defend or indemnify Graham or Arch, the first question is whether Graham is an insured under the Markel Policy for purposes of the Second Gaytan Action. *See Federated Serv. Ins. Co. v. All. Const., LLC*, 805 N.W.2d 468, 474 (Neb. 2011) ("Whether an insurer has a duty to indemnify and defend an insured depends upon whether the insured's claimed occurrence falls within the terms of the insurer's coverage as expressed in the policy."). Plaintiffs argue that Graham is covered under the policy by operation of the Completed Operations Endorsement and the Additional Insured Endorsement. If Graham is not an insured under either endorsement for purposes of the Second Gaytan Action, then no duty by Markel to indemnify or defend Graham can arise.[8] The Court considers each endorsement in turn.

---

[7] The parties agree that Nebraska law governs the questions of law presented in this case.
[8] Under Nebraska law, "an insurance policy or contract is generally understood to consist of two separate and distinct obligations: the duty to defend any suit filed against the insured party and the duty to pay, on behalf of the insured, sums for which the insured shall become legally obligated because of injury caused to a third party by acts of the insured." *Peterson v. Ohio Cas. Grp.*, 724 N.W.2d 765, 773 (Neb. 2006). While "[a]n insurer's duty to defend is broader than its duty to indemnify," *id.*, this Court analyzes both of Markel's alleged duties together for purposes of coverage under the Markel Policy because "[an] insurer is not bound to defend a suit based on a claim outside the coverage of the policy." *Id.* at 774 ("If, according to the facts alleged in a pleading and ascertained by an insurer, the insurer has no potential liability to its insured under the insurance agreement, then the insurer may properly refuse to defend its insured.").

**I. The Completed Operations Endorsement**

The Markel Policy contained an endorsement that named Graham Construction as an insured, "but only with respect to liability for 'bodily injury' or 'property damage' caused . . . by 'your work' . . . and included in the 'products completed operations hazard'." (Filing No. 25-1 at ECF 183.) Markel argues that this endorsement covers Graham only for "completed operations" as opposed to "ongoing operations." (Filing No. 29 at 13–14.) Thus, because Sanchez died in the course of an ongoing operation, the Wal-Mart Project, Graham is not an insured pursuant to the Completed Operations Endorsement for the purposes of the Second Gaytan Action.

Plaintiffs argue that the language of the Completed Operations Endorsement is ambiguous, and should be construed in favor of Graham. This Court finds no ambiguity in the endorsement. *See Callahan v. Washington Nat. Ins. Co.*, 608 N.W.2d 592, 598 (Neb. 2000) (citing *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 571 N.W.2d 64 (Neb. 1997)) ("A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings."); *id.* (citing *American Family Ins. Group v. Hemenway*, 575 N.W.2d 143 (Neb. 1998)) ("[A]mbiguity will not be read into policy language which is plain and unambiguous in order to construe against the preparer of the contract."). The endorsement states that Graham is an additional insured, "but only with respect to" D & BR's actions that are "included in the 'products completed operations hazard'." (Filing No. 25-1 at ECF 183.) Explicitly excluded from the "Products-Completed Operations Hazard" is work by D & BR on the Wal-Mart Project that "has not yet been completed or abandoned." (Filing No. 25-1 at ECF 80 § 16.) There is no dispute that at

the time of the accident, D & BR's work on the Wal-Mart Project was ongoing.[9]  (File No. 23 ¶ 10.)  Therefore, Graham's coverage did not apply, and no duty to defend or indemnify on the part of Graham could arise in Second Gaytan Action pursuant to the Completed Operations Endorsement.

**II. The Additional Insured Endorsement**

The next question before the Court is whether the Additional Insured Endorsement requires Markel to indemnify or defend Graham.  The endorsement states that "any person or organization for whom [D & BR] is required by written contract . . . to provide insurance is an Insured . . . ."  (Filing No. 25-1 at ECF 119.)  There is no dispute that, because of the operation of the Subcontract, this language includes Graham, however Markel argues that two distinct limitations within the endorsement preclude coverage for Graham for the Second Gaytan Action.

First, the endorsement states that "[Graham] is an insured only to the extent [D & BR is] held liable due to: . . . [D & BR's] ongoing operations for [Graham] . . ." ("Held Liable Limitation").  (*Id.* at ECF 119.)  Second, the endorsement states "[n]o coverage will be provided if, in the absence of this endorsement, no liability will be imposed by law on [D & BR].  Coverage will be limited to the extent of [D & BR's] negligence or fault according to the applicable principles of comparative fault" ("No Liability Limitation"). (*Id.* at ECF 120.)

---

[9] Plaintiffs argue that the phrase "and included in the 'products completed operations hazard'" may be reasonably interpreted to mean that Graham is insured with respect to both completed and ongoing operations.  (*See* Filing No. 28 at 6.)  However, the sentence in its entirety makes clear that, under the endorsement, Graham is an additional insured "*but only with respect to* liability for 'bodily injury' or 'property damage' caused, in whole or in part, by 'your work' . . . performed for [Graham] and included in the 'products-completed operation hazard'."  (Filing No. 25-1 at 183 (emphasis supplied).)  For this reason, the Court cannot accept Plaintiffs' proffered interpretation.  *See Callahan*, 608 N.W.2d at 598 ("The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous.").

Markel argues that according to the plain meaning of "held liable," the endorsement provides coverage only to the extent D & BR could be found liable in a court of law. Because Gaytan's exclusive remedy against D & BR is through the Nebraska Workers' Compensation Act,[10] Markel argues that D & BR cannot be held liable in the Second Gaytan Action, and thus, Graham is not covered by the Markel Policy for defense or indemnification in the action. (Filing No. 27 at 9–11.)

Plaintiffs argue that coverage extends to Graham to the extent of D & BR's actual negligence or fault for Sanchez's death. (Filing No. 28 at 7–12.) Specifically, Plaintiffs argue that the second sentence of the No Liability Limitation, which states "[c]overage will be limited to the extent of your negligence or fault according to the applicable principles of comparative fault," indicates that the limitation as a whole is not intended to limit coverage according to principles of legal liability, but rather, actual fault. (*See* Filing No. 28 at 8–9.) Plaintiffs argue that, at the very least, the endorsement is ambiguous, and must be interpreted in favor of Graham as the additional insured. (*Id.* at 9 (citing *Poulton v. State Farm Fire & Cas. Companies*, 675 N.W.2d 665, 673 (Neb. 2004)) ("[A]n ambiguous insurance policy will be construed in favor of the insured . . . .").)

Plaintiffs rely primarily on two cases from the U.S. District Court for the District of Oregon to support their position, *Richardson v. Wright Constr.*, No. CV-05-1419-ST, 2007 WL 1467411 (D. Or. May 18, 2007) and *Clarendon Nat'l Ins. Co. v. American States Ins. Co.*, 688 F. Supp. 2d 1186 (D. Or. 2010). In both cases, the district court

---

[10] Under the Nebraska Workers' Compensation Act, an employer cannot be liable in a tort action for an employee's injury incurred in the course of employment. *Tompkins v. Raines*, 530 N.W.2d 244, 246 (Neb. 1995) ("[The Nebraska Supreme Court has] held that the [Nebraska] Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment.").

13

found that the exclusivity of Oregon's workers' compensation statute did not remove a general contractor from coverage by a subcontractor's insurance for injuries sustained by the subcontractor's employees to the extent of the subcontractor's fault, even though the subcontractor could not held liable to the employee.

In *Richardson*, the plaintiff, an employee of a subcontracting painting company, was injured on a job site. *Richardson*, 2007 WL 1467411, at *2. The plaintiff brought a negligence action against the general contractor, who in turn sought indemnification from the subcontractor's insurer. *Id.* The general contractor and subcontractor had previously agreed that the subcontractor would maintain insurance and indemnify the general contractor "only to the extent of [the] negligence of [the subcontractor]." *Id.* The subcontractor waived any immunity granted to it under Oregon's workers' compensation statute. *Id.* at *3. The insurance policy procured by the subcontractor contained an endorsement naming the general contractor as an additional insured but subject to language identical to that of the Held Liable and No Liability Limitations. *Id.* The subcontractor's insurer argued that it was not required to defend or indemnify the general contractor because the subcontractor could not be held liable under Oregon law.

In holding that the endorsement could give rise to the insurer's duty to defend the general contractor under the facts of the case, the magistrate judge interpreted the language of the No Liability Endorsement:

> By relying only on the first sentence of the exclusion, [the subcontractor's insurer] ignores the import of the second sentence. . . . The second sentence limits coverage to [the general contractor] as an "additional insured" to the extent of "[the subcontractor's] negligence or fault, according to the applicable principles of comparative fault." In other words, coverage is provided to [the general contractor] only for injuries

14

caused by [the subcontractor] and also limits coverage to the percentage of fault assigned to [the subcontractor]. This is similar to the [Oregon] statutory language which forbids any provision in a construction agreement to require indemnity of the general contractor for damages caused in whole or in part by its own negligence, but allows the subcontractor to indemnify the general contractor for damage attributable to the subcontractor's own fault.

In addition, the second sentence creates an internal ambiguity. If the first sentence is read as urged by [the subcontractor's insurer], then the exclusion would bar coverage whenever the injured party is an employee of the subcontractor. However, the second sentence says that [the subcontractor's insurer] will provide coverage to the extent of [the subcontractor's] negligence or fault. To that extent, the second sentence conflicts with the first sentence by which [the subcontractor's insurer] seeks to exclude coverage. The only way to reconcile the two sentences is to conclude that the second sentence, unlike the first sentence, applies to non-employees of the subcontractor. If that was the intent of the exclusion, it was not clearly expressed. At best, the exclusion is ambiguous.

*Richardson*, 2007 WL 1467411, at *8–9.

In *Clarendon*, a general contractor's insurer sought indemnification and defense from a subcontractor's insurer for injuries incurred by the subcontractor's employee on the job site. 688 F. Supp. 2d at 1187–88. Interpreting language identical to that in *Richardson*,[11] the district court adopted *Richardson's* reasoning[12] as to why the general contractor was covered under the policy even though the subcontractor could not be held liable under Oregon law. *Clarendon*, 688 F. Supp. 2d at 1191.

---

[11] Markel argues that *Clarendon* and *Richardson* are distinguishable from the present case because they do not involve the Held Liable Limitation, but merely interpret the No Liability Limitation. (See Filing No. 31 at 3–5.) In *Richardson*, the district court noted that the endorsement at issue contained language constituting both the Held Liable Limitation and the No Liability Limitation, although the court only explicitly interpreted the language of the No Liability Limitation. *Richardson*, 2007 WL 1467411, at *3 & *8. *Clarendon* notes that the endorsement at issue contained the language of the No Liability Limitation but does not mention the Held Liable Limitation. *Clarendon*, 688 F. Supp. 2d at 1191. The court did state that the exclusion was "identical" to the one in *Richardson*. *Id.*

[12] Where the magistrate judge in *Richardson* stated that "at best, the exclusion is ambiguous," 2007 WL 1467411, at *9, the court in *Clarendon* impliedly found that the relevant endorsement unambiguously covered the general contractor for the employee's injuries to the extent of the subcontractor's negligence. *See Clarendon*, 688 F. Supp. 2d at 1191 n.2.

15

Conversely, another case from the District Court for the District of Oregon supports Markel's interpretation of the Additional Insured Endorsement. *See Columbia River Rentals, LLC v. Phillips, No.* CV-08-395-HU, 2009 WL 632933, at *7 (D. Or. Jan. 14, 2009), *report and recommendation adopted*, No. CV 08-395-HU, 2009 WL 598014 (D. Or. Mar. 6, 2009). In *Columbia River Rentals*, a construction equipment rental company brought suit against a quarry company, the quarry company's owner, to whom the construction equipment rental company had rented an industrial truck, and the quarry company's insurer. 2009 WL 632933, at *1. The rental company sought a declaration that the insurer was obligated to defend it in separate suits brought by the quarry company's owner and an employee at the quarry, both of whom were injured in an accident involving the rented truck. *Id.* at *2. The defendants asserted that language in the governing insurance policy identical to the Held Liable Limitation removed the rental company from coverage for the accident because the quarry company owner, as the named insured of the policy, could not be "held liable" to himself for his own injuries.[13] *Id.* at *6–7. The plaintiff argued that the phrase "held liable" was ambiguous as to whether it meant legally liable or responsible. *Id.* at *7.

In interpreting the Held Liable Limitation, the magistrate judge concluded that "the primary meaning of 'liable' is to mean a *legal* obligation. While 'responsible' is another definition, it is not the primary one and thus, not the ordinary or popular meaning." *Id.* (emphasis supplied) ("Thus, the plain, ordinary, and popular meaning of 'liable' in this provision is a legal obligation. Plaintiff is an insured only to the extent that

---

[13] The defendant-owner argued both that the underlying suit did not allege any comparative negligence on the part of the injured defendant, and that, even if there was such comparative negligence, the Held Liable Limitation prevented coverage because a person cannot be held liable against himself for his own negligence. *Columbia River Rentals,* 2009 WL 632933, at *6.

16

[Defendant] has a legal obligation to pay someone damages as a result of his use of the leased equipment. Because [Defendant] cannot be legally obligated to pay himself damages, plaintiff is not an insured under the endorsement.").[14]

The Montana Supreme Court reached conclusions similar to that in *Columbia River Rentals* in two cases interpreting policy language identical to the Held Liable Endorsement and No Liability Endorsement at issue here. *See F.H. Stoltze Land & Lumber Co. v. Am. States Ins. Co.*, 352 P.3d 612 (Mont. 2015); *Plum Creek Mktg., Inc.* v. *American Econ. Ins. Co.*, 214 P.3d 1238 (Mont. 2009).

In *F.H. Stoltze*, the court applied its earlier reasoning in *Plum Creek*[15] to determine that a logging company's insurer did not owe a duty to defend or indemnify the owner of the land on which the logging company was working in a suit by an employee of the logging company injured on the land. *F.H. Stoltze,* 352 P.3d at 613–15. The employee had sued both the logging company and the landowner, but the logging company was dismissed from the suit because the employee's exclusive remedy against it was through Montana's workers compensation statute. *Id.* at 613.

---

[14] The court further held that:
Even if [the court] construe[s] "liable" to mean "responsible" in the sense of bearing some fault for the injury and thus the damages [Defendant] sustained, but for which [Defendant] is not necessarily legally obligated to pay money, plaintiff's argument fails. If this argument is successful, it would mean that [Defendant] would either recover the portion of damages his comparative fault is meant to preclude him from recovering, or, would use the "liability" to himself (which he does not have under the law), as the underpinning of a duty to defend and later potentially indemnify, under the policy. This construction of the term "liable" is neither plain, ordinary, nor popular, and in this Court's opinion, is devoid of common sense.
*Id.* at *8.

[15] In *Plum Creek*, a contractor's employee was injured performing repairs at a mill. 214 P.3d at 1240–41. The employee sued the company that owned the mill for negligence. *Id.* The company tendered its defense to the contractor's insurer and, after the insurer refused and the company settled, sought indemnification from the insurer. *Id.* The Montana Supreme Court held that because the company was sued for its own negligence, the limiting language of the endorsement—identical to the Held Liable and No Liability Limitations—in the insurer's policy removed the company from coverage under the circumstances because the contractor could not be held liable. *Id.* at 1247–48.

The logging company's insurer refused to defend the landowner after the dismissal because the logging company could not be "held liable" in the suit. *Id.* at 613–14. The court declined to adopt the reasoning of the District of Oregon's holdings in *Clarendon* and *Richardson* and rejected the argument that the interplay of the two sentences of the No Liability Endorsements created an internal ambiguity. *Id.* at 615. The court stated:

> The first sentence of the [No Liability Endorsement] states that [the insurer] will not cover an additional insured in situations in which the named insured cannot be held liable. The second sentence states that, in situations in which the named insured can be held liable, [the insurer's] coverage of an additional insured is limited to the extent of the named insured's proportional negligence or fault.

*Id.*

Applying Nebraska law, this Court must strive to interpret the Additional Insured Endorsement as would a Nebraska court. Although the parties have not submitted—and this Court has not found—Nebraska case law interpreting the specific language at issue, the Nebraska Supreme Court has interpreted the phrase "person liable" to refer to one who is exposed to legal liability and thus exclusive of those shielded from liability by the Nebraska Workers' Compensation Act. *See Downey v. W. Cmty. Coll. Area*, 808 N.W.2d 839, 852 (Neb. 2012) (holding that an employer was not a "person liable" under Nebraska law "because an employer covered by workers' compensation has no liability in tort"). The Nebraska Supreme Court's reasoning in *Downey* most closely aligns with that of *Columbia River Rentals* and *F.H. Stoltze*, *i.e.*, that the term "held liable" refers solely to a *legal* obligation. Consequently, because no such liability can attach to D & BR in the Second Gaytan Action, Graham is not covered as an additional insured under the Additional Insured Endorsement.

Plaintiffs note that under their interpretation of the Additional Insured Endorsement, the Markel Policy provides the type and extent of coverage to which the parties agreed in the Subcontract. Whether this is accurate or not, the Court cannot look past the plain language of the Markel Policy to provide such coverage. *Federated*, 805 N.W.2d at 474 ("[Nebraska courts] construe insurance contracts like other contracts, according to the meaning of the terms that the parties have used."). The Subcontract and the Markel Policy are independent agreements negotiated by sophisticated parties,[16] both of whom knew the documents would be interpreted in accordance with Nebraska law, including the Nebraska Workers' Compensation Act.

Because neither the Completed Operations Endorsement nor the Additional Insured Endorsement extends coverage to Graham for purposes of the Second Gaytan Action, Graham is not an additional insured under the Markel Policy, and no duty to indemnify or defend Graham or Arch in the Second Gaytan Action can arise.

## CONCLUSION

For the reasons discussed herein, Plaintiffs Graham Construction, Inc. and Arch Insurance Co.'s Motion for Summary Judgment (Filing No. 22) will be denied and Defendant Markel American Insurance Co.'s Motion for Summary Judgment (Filing No. 26) will be granted. Accordingly,

IT IS ORDERED:

1. Plaintiffs Graham Construction, Inc. and Arch Insurance Co.'s Motion for Summary Judgment (Filing No. 22) is denied;

---

[16] Plaintiffs additionally argue that D & BR waived its non-liability under the Nebraska Workers' Compensation Act through the terms of the Subcontract. (Filing No. 28 at 8.) While the Subcontract stated that D & BR's obligation to indemnify would not be limited by "any limitation on the amount . . . of damage . . . payable to or for any third party under workers' compensation acts," (Filing No. 25-4 at ECF 12 § 29), Plaintiffs do not explain how the Subcontract—a document to which Markel is not a party—can override the plain terms of the Markel Policy to provide coverage explicitly withheld by the policy.

19

2. Defendant Markel American Insurance Co.'s Motion for Summary Judgment (Filing No. 26) is granted;

3. Graham Construction, Inc. is not an insured under the Markel Policy for purposes of *Guadalupe Gaytan, Special Administrator of the Estate of Jose Sanchez-Dominguez v. Wal-Mart, et al.*, District Court of Douglas County, Nebraska, No. CI 10-9387269;

4. Markel American Insurance Co. does not owe Plaintiffs Graham Construction, Inc. and Arch Insurance Co. defense or indemnity for purposes of *Guadalupe Gaytan, Special Administrator of the Estate of Jose Sanchez-Dominguez v. Wal-Mart, et al.*, District Court of Douglas County, Nebraska, No. CI 10-9387269;

5. The above-captioned is dismissed with prejudice; and

6. A separate judgment will be entered.

Dated this 13th day of April, 2016

> BY THE COURT:
>
> s/Laurie Smith Camp
> Chief United States District Judge